G. W. COLE *v.* J. O. BRYANT.

CONTRACTS.    *Sale.    Insufficient delivery.*

> Where, under a contract for the sale of pipe staves, the vendor engages to make and put them on the side track of a railway at a designated locality, and the purchaser is to have the right to there inspect and cull them before accepting and paying for them, the mere putting them on the side track, as agreed upon, is not such a delivery as will defeat a subsequent transfer of them, while on the side track, by bill of sale, to a third person, made before they have been inspected. or anything else has been done looking to their acceptance under the contract first mentioned.

FROM the circuit court of the second district of Chickasaw county.

HON. NEWNAN CAYCE, Judge.

This was an action of replevin instituted by Cole for the recovery of 12,000 white oak pipe staves valued at $75 per thousand. On the trial, he introduced the following writing, signed by H. B. Horton, the maker of the staves:

"OKOLONA, MISS., September 6, 1893.

"This is to certify that I have agreed with G. W. Cole to turn over to him all the staves I have here at Okolona for money and supplies I have received, and are to receive, from this date on, and, when paid, then this instrument of writing is void, or otherwise in full force.          H. B. HORTON."

He testified that, under this contract, he furnished Horton supplies to the amount of $505.65, to buy timber and pay hands for getting out staves, and hauling them to Okolona; that after the staves were hauled to the depot in Okolona, he demanded of Horton the money so advanced, when Horton stated that he did not have the money, and offered to sell him what staves he had at the depot; and that he, the plaintiff,

agreed to take them, and did take them, after counting them and ascertaining that there were 12,000 of them; that he gave Horton $600; that Horton paid his account with him by the transfer, and he promised to pay the balance on the staves to certain persons Horton owed; that Horton executed a bill of sale to him as follows:

"OKOLONA, MISS., October 30, 1893.

"This is to certify that I have sold to G. W. Cole (12,000) twelve thousand staves that I have at the depot in the town of Okolona, Miss., for the amount $600, and received payment in full.　　　　　　　　　　　　　　　　H. B. HORTON."

that Horton turned over the staves to him, and that he then went to the railway agent at Okolona, and notified him that he had bought the staves, and requested him to keep them for him; that he did not know of anyone having any claim to the staves, which were bought by him to save his account.

The defendant introduced the following contract with Horton:

"PONTOTOC, MISS., August 12, 1893.

"In consideration of one dollar ($1), in hand paid, the receipt of which is hereby acknowledged, I hereby bargain, sell, convey and warrant title to J. O. Bryant to all the staves I now have on hand, or may make or cause to be made for the following twelve months from above date, for the sum of one hundred dollars ($100), for one thousand two hundred pieces of extra heavy pipe staves, or their equivalent of other class, such as lights or culls, as is generally stave rule; said staves are to be delivered at Okolana, Miss., on side track on M. & O. R. R., as they are made. Said staves are then and there to be inspected and culled by J. O. Bryant. The said J. O. Bryant, in consideration of above sale, does agree to furnish me $25 per thousand (1,200 pcs.) on staves at stump, the remainder to be paid when staves are counted and inspected on railroad.

"H. B. HORTON."

He testified that he "was to pay so much per thousand;" that he paid Horton $50 at the time the contract was made, and other sums, amounting in the aggregate to $140, at the time the final payment was made; that the staves were delivered at the depot at Okolona, and that he was to examine and cull them, and might reject such as were unfit for use, and pay for them, or what remained due on them; that he came to Okolona to receive the staves, and to pay for them, and, on his arrival, was informed by the plaintiff that he had bought the staves. Horton testified on behalf of defendant that he had delivered the staves to him, but states the facts that he thought consti-tuted a delivery—that is to say, his getting out the staves, and putting them at the depot in Okolona, in accordance with his contract with defendant.

The defendant also introduced testimony designed to show that the sale to plaintiff was a mere sham, a device to defeat Horton's creditors. The plaintiff denied in his testimony that there was any truth in this charge.

The court granted the following instruction for the defendant, over plaintiff's objection:

"3. The court instructs the jury that, if, from the evidence, they believe there was a contract conveying title upon delivery for the sale of staves, to be delivered at the Mobile & Ohio Railroad depot at Okolona, between Horton and defendant, J. O. Bryant, and that, in accordance with said contract, Horton did deliver the staves in controversy at said depot, then, the very moment they were so delivered the title to said staves passed absolutely to said Bryant, and said Horton lost all right to dispose of the same."

Verdict and judgment for defendant, and plaintiff appealed.

*T. J. Buchanan*, for the appellant.

1. The testimony shows that Cole had to furnish the money to enable Horton to buy the timber out of which the staves were made. When he contracted with Bryant they had no po

tential existence, and could not be made the subject of sale. Having no actual or present interest in the timber out of which the staves were made, he could not pass title at the time he contracted with Bryant. *Parker* v. *Jacobs*, 37 Am. Rep., 728; 23 *Ib.*, 518; 22 *Ib.*, 644; 96 Am. Dec., 491; 50 Miss., 398; Benjamin on Sales (4th ed.), § 78.

2. There was no delivery to Bryant. By the terms of his contract, it was provided that, after they were put at the railway depot, he was to inspect and cull them and then pay whatever balance might be due on them, if accepted by him, and nothing of the kind was done prior to Cole's purchase. He also failed to count them and pay at the stump the $25 per thousand, in accordance with the contract. Until these things were done, there could be no completed sale. *McDonald* v. *Hewett*, 15 Johns., 349; *Hart* v. *Livermore Foundry*, 72 Miss., 809.

The third instruction given for defendant is clearly erroneous.


*Lacey & Stockett*, for the appellee.

The appellee has a written contract of sale antedating the transaction of Horton with Cole. He also showed delivery anterior to the sale to Cole. The staves were, under the contract of sale with the appellee, to be delivered at the Mobile & Ohio railroad depot, and were there delivered in strict compliance with that contract. If not before, certainly title passed to the appellee upon delivery of the staves at the depot. Nothing remained to be done by Horton. The counting, culling and payment of the balance due were to be done by the appellee. 21 Am. & Eng. Enc. L., p. 477; Newmark on Sales, §§ 81, 82, 94. In the case at bar there was actual delivery before Cole had or claimed to have a shadow of right. The terms of sale, price, time of payment and place of delivery had all been fixed by the contract, and the title passed *pari passu* with the signing of the contract. The price was not only

agreed upon, but the staves were, under the contract, placed at the disposal of the vendee, Bryant. *Garland* v. *Stewart & Yerger*, 31 Miss., 314; *Jordan* v. *Harris, Ib.*, 257; *Smith* v. *Sparkman*, 55 Miss., 649.

COOPER, C. J., delivered the opinion of the court.

The third instruction for the defendant should not have been given. There is no evidence in the record showing a delivery of the staves by Horton to Bryant before the contract between Cole and Horton (whatever may have been its nature) was entered into. True, Horton says he had delivered the staves to Bryant under his contract with him, but he states precisely what was done, and what was done did not constitute delivery. He carried the staves, it is true, to the place where delivery was to be made, but this was no delivery, for the staves were not received or accepted by Bryant, who, under his contract of purchase, had the right to "inspect and cull" them. He went to Okolona to inspect, cull and receive them, and when he got there, found that the contract with Cole had already been made.

Neither possession nor title passed under the executory contract between Horton and Bryant when the staves were put "on the side track of the Mobile & Ohio Railroad at Okolona." That was the place they were to be put for delivery, but putting them there was not delivery under the contract. *Berry* v. *Waterman*, 71 Miss., 497.

*Reversed and remanded.*